UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | Chapter 11 |
| | ) | |
| 4100 WEST GRAND LLC, | ) | Case No. 11-42873 |
| | ) | |
| Debtor, | ) | Hon. Jacqueline P. Cox |
| _____ | ) | |
| 4100 WEST GRAND LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Adv. No. 11-02278 |
| | ) | |
| v. | ) | |
| | ) | |
| TY GRAND LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## AMENDED MEMORANDUM OPINION ON ADVERSARY PROCEEDING

This matter comes before the court on the adversary complaint (the "Complaint") of 4100 West Grand LLC, debtor in possession (the "Debtor") against TY Grand LLC[1] ("TY Grand") to avoid and recover a transfer alleged to be fraudulent pursuant to 11 U.S.C. §§ 544, 548 and 740 ILL. COMP. STAT. §§ 160/5 and 160/6. For the reasons noted herein, the court enters judgment in favor of TY Grand.

---

[1]Matthew Brotschul was also named as a defendant in the Complaint, but the claims asserted against him were dismissed.

## I.   JURISDICTION

The jurisdiction of bankruptcy courts is limited.  Bankruptcy courts have statutory authority to "hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) ..., and may enter appropriate orders and judgments, subject to review under section 158 of this title." 28 U.S.C. § 157(b)(1).  Core proceedings include proceedings to determine, avoid, or recover fraudulent conveyances.  28 U.S. § 157(b)(2)(H).

"Arising under" jurisdiction connotes authority to adjudicate proceedings arising under title 11, such as matters under which a claim is made based on a provision of title 11.  Generally, this includes causes of action created by title 11. "Arising in" jurisdiction connotes authority to adjudicate administrative matters, such as orders to turn over property of the estate; determinations of the validity, extent or priority of liens; contempt matters; motions to appoint an additional committee under section 1102 of the Bankruptcy Code (the "Code") and motions to appoint or to elect trustees and examiners under Code section 1104.  *See* 1 COLLIER ON BANKRUPTCY ¶ 3.01[3][e][I] - [iv] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.); *In re IFC Credit Corp.*, 431 B.R. 802, 804 (Bankr. N.D. Ill. 2010).

28 U.S.C. § 1334(a) provides that federal district courts have 'original and exclusive jurisdiction" of all cases under title 11 of the United States Code, the Bankruptcy Code.  28 U.S.C. § 157(a) allows the district courts to refer cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 to the bankruptcy judges for the district.  The authority to determine core proceedings arising in or arising under title 11, subject to review under section 158 of title 28, allows bankruptcy judges to enter final judgment on

those matters subject to review in the district court.  28 U.S.C. §§ 157(b)(1) and 158(a).

In *Stern v. Marshall,* —U.S.—, 131 S.Ct. 2594 (2011) the Supreme Court ruled that 28 U.S.C. § 157(c)(2) was unconstitutional.  That section provided that estate counterclaims brought in response to claims filed against the bankruptcy estate were core proceedings, over which a bankruptcy judge had authority to enter final judgments.  The Supreme Court held that Congress went too far in allowing bankruptcy judges to enter final judgment on state law counterclaims that are not resolved in the process of ruling on a creditor's proof of claim.  131 S. Ct. at 2620.

The Defendant, Creditor TY Grand LLC, filed several proofs of claim herein.  As fully explained herein at Section D, 1, each proof of claim asserts TY Grand's claims in the alternative, the resolution of which would be determined by the outcome of the adversary proceeding.  In proof of claim 3-1 TY Grand asserted that it had a secured claim if the Debtor prevailed on its fraudulent conveyance claim, but if TY Grand prevailed, its claim would be unsecured.  Exhibit A attached to proof of claim 3-3 asserts at paragraph 7 that "[d]epending on the outcome of the litigation, there are two different amounts of TYG's claim.  The first amount is if TYG prevails in the litigation ($2,262,170.34), and the second amount is if TYG does not prevail in the litigation ($2,722,170.34). . . ."  While the claims being advanced in this adversary proceeding are not counterclaims, their resolution implicates the process of ruling on the creditor's proof of claim as proof of claim 3-3 makes clear that TY Grand's claim depends on the outcome of the fraudulent conveyance claim.  TY Grand's proofs of claim 3-4 and 3-5 also assert TY Grand's claims in the alternative.

In *Granfinanciera, S.A. v. Nordberg,* 492 U.S. 33, 64 (1989), the Supreme Court held that a person who has not submitted a claim against a bankruptcy estate has a right to a jury trial when sued in bankruptcy to recover an allegedly

fraudulent transfer, notwithstanding Congress' designation of fraudulent conveyances as core proceedings. The *Stern* decision implicated *Granfinanciera* because it makes clear that the filing of a claim by a creditor does not give a bankruptcy court authority to enter a final judgment on a fraudulent conveyance claim. The bankruptcy court's authority depends on whether resolution of the debtor's fraudulent conveyance claims is necessary to resolve the creditor's proof of claim. "The Bankruptcy Court below lacked the constitutional authority to enter a final judgment on a state law counterclaim that is not resolved in the process of ruling on a creditor's proof of claim." *Stern*, 131 S.Ct. at 2620. The proofs of claim filed herein make it clear that their resolution depends on the outcome of the Debtor's fraudulent conveyance claims. The court agrees. For that reason the court has authority to enter a final judgment herein.

The Seventh Circuit has ruled that non-Article III judges may hear cases when the claim arises as part of the process of allowance and disallowance of claims or when the claim becomes integral to the restructuring of the debtor-creditor relationship. *In re Ortiz*, 665 F.3d 906, 914 (7th Cir. 2011).

28 U.S.C. § 157(c)(1) provides that a bankruptcy judge may hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11. The bankruptcy judge has to submit proposed findings of fact and conclusions of law to the district court, which would enter a final judgment after de novo review. Should a reviewing court find that this court lacks authority to enter a final order herein, this memorandum opinion may serve as its proposed findings of fact and conclusions of law under section 157(c)(1).

## II.  FACTS AND BACKGROUND

11 U.S.C. § 544 allows a trustee or debtor in possession to avoid transfers or obligations that are avoidable under state law. It "vests the trustee with the ability of a judgment lien creditor to attach or seize both tangible and intangible property transferred by the debtor to a third party prior to filing for bankruptcy. . . ." *Albert v. Tuft (In re Greater Southeast Community Hosp. Corp.)*, 333 B.R. 506, 520 (Bankr. D.D.C. 2005). 11 U.S.C. § 1107 gives debtors in possession the rights of a trustee, including the right to avoid fraudulent transfers. 7 COLLIER ON BANKRUPTCY ¶ 1107.03 (Alan N. Resnick & Henry J. Sommer eds. 16th ed.). The Debtor, 4100 West Grand LLC, exercised the authority of a trustee under section 548 of the Bankruptcy Code to avoid the September 30, 2011 recording of a deed in lieu of foreclosure as a fraudulent transfer.

### A.    The Parties

TY Grand LLC, the Defendant herein, is an Illinois limited liability company, engaged in the business of making loans on real estate. It acquired the note secured by real estate that was owned by the Debtor. TY Grand conducts its business in Chicago, Illinois.

Matthew Brotschul ("Brotschul") is an attorney licensed to practice law in Illinois; he is TY Grand's representative. Brotschul was involved in the formation of TY Grand. *See* July 10 - 11, 2012 Trial Transcript on Adversary Proceeding 11-02278, at 69 ("Trial Tr.").

Ruben Ybarra is a real estate investor and Manager of TY Grand. (Trial Tr. at 184 ; Plaintiff's Exhibit 16, Affidavit of Ruben Ybarra).

Bruce Teitelbaum and Yolanda Ybarra are the owners of TY Grand. (Trial Tr. at 68-69, 182-183).

Ljubomir Sopcic is a member of the Debtor. (Trial Tr. at 293).

## B. The RBS Charter One Loan

On September 20, 2007, Charter One Bank made a loan to the Debtor in the amount of $2,100,000 (the "Loan"). The Loan was secured by commercial real estate located at 4100 West Grand Avenue, Chicago, Illinois (the "Property"). The Loan was evidenced and secured by the following instruments: a Loan Agreement; a Five-Year Adjustable Term Note ("Note"); Unlimited Guaranties executed separately by Dennis Sopcic, Ljubomir Sopcic, and Joseph Murphy; a Commercial Mortgage; a Security Agreement; and an Assignment of Leases and Rents (collectively, the "Loan Documents"). Second Amended Joint List of Stipulated Facts, ¶ 8, dkt. no. 73.

On or before December 31, 2010, the Debtor defaulted on the Loan (the last payment was made in September, 2009). (Joint Stipulation, ¶ 9, dkt. no. 73. *See* also Trial Tr. at 206, 249). On March 29, 2011, the Royal Bank of Scotland, successor in interest to Charter One Bank, assigned the Loan Documents to TY Grand. The Loan Documents were purchased by TY Grand for $515,000. The Debtor contributed $110,000 of the sale price to TY Grand. (Trial Tr. at 76). The remaining $405,000 was paid by TY Grand. The Debtor was then liable on the $2.5 million debt to TY Grand.

## C. The Forbearance Agreement

Prior to March 29, 2011, the Debtor and one or more of the principals of TY Grand were introduced, and commenced negotiations regarding the purchase of the

Loan Documents. (Complaint, ¶¶ 13,18). Contemporaneous with the purchase of the Loan Documents, TY Grand and the Debtor entered into a Forbearance and Loan Modification Agreement ("Forbearance Agreement") wherein the TY Grand agreed to forbear pursuing its remedies in connection with existing defaults under the Loan Documents. (Plaintiff's Exhibit 11). Execution of the Forbearance Agreement was contingent upon the consummation of the note purchase by TY Grand.

Pursuant to its terms, TY Grand agreed to reduce the $2.1 million original loan balance to $865,000[2] ("Reduced Balance") if the Debtor made certain payments and otherwise complied with the terms set forth in the Forbearance Agreement. Second Amended Joint List of Stipulated Facts, Adversary Proceeding 11-2278, dkt. no. 73, ¶ 10; Forbearance Agreement, ¶ 1.1(d).

The salient terms of the Forbearance Agreement are as follows:

## Article I

### 1.1 Forbearance of Defaults and Modification of the Loan Documents

(a) The maturity date of the Loan shall be June 29, 2011.

(b) Immediately upon the full execution of this Agreement, Borrower [Plaintiff-Debtor] shall make a payment of . . . $110,000 to Lender.

(c) Commencing on April 15, 2011. . . Borrower shall make monthly payments to Lender in the amount of $15,000.00. theses [sic] monthly payments shall not be applicable to the Reduced Payoff Amount (as hereinafter defined).

(d) In full satisfaction of the Loan Documents and this Agreement, Borrower shall (prior to the Maturity Date) make a payment in the amount of $710,000 (the "Reduced Payoff Amount") to Lender. Upon

---

[2]The $865,000 figure may have been calculated by adding the down payment of $110,000 and the three monthly payments of $15,000 each (which total $45,000), for a total of $155,000; that $155,000 when subtracted from $865,000 may equal the final "reduced payoff amount" of $710,000.

delivery of such payment (provided no default per this Agreement has occurred), Borrower and Guarantor shall be released from further obligations under the Loan Documents and this Agreement.

**1.2 Representations and Warranties.**  To induce Lender to execute and perform this Agreement and as contemporaneous consideration for Lender's forbearance detailed in Section 1.1 hereof, Borrower and Guarantor hereby represent, covenant and warrant to Lender as follows:

(a) As of January 20, 2011, the total amount outstanding on the Loan is . . . ($2,510,123.90).

* * *

(d) All utility bills applicable to the Property are paid current.

* * *

(I) The Mortgage is a first priority mortgage lien on the Property and all real estate taxes (which are due and payable) applicable to the Property have been paid in full.

* * *

(k) There exist no exceptions to title except those set forth in Exhibit C attached hereto and incorporated herein by reference (the "Permitted Exceptions").

(l) The terms, provisions, representations and warranties of the Loan Documents (which are not specifically modified herein) shall remain in full force and effect. Furthermore, the agreement by Lender to forbear certain defaults shall not be a waiver of the right to pursue such defaults in the future, nor shall be a waiver of Borrower's duty to strictly comply with the terms of the Loan Documents.

* * *

-8-

**Article II**

&ast; &ast; &ast;

**2.2    Recordation of Deeds Upon Lender's Discretion.**

Upon a default by Borrower and/or Guarantor, pursuant to
the terms of the Loan Documents (as revised by this
Agreement) or this Agreement, Lender shall have the right
(but not the obligation unless otherwise set forth herein) to
record the Return Deed (as a deed in lieu of foreclosure)
and cause the Property to be transferred to Lender.

&ast; &ast; &ast;

**2.4.    Mandatory Recordation of Deed**. Notwithstanding anything
contained herein, provided Borrower does not default in the future
pursuant to the terms of this Agreement or the Loan Documents, other
than the failure to the [sic]  monthly payments detained in 1.1© or the
payment of the Reduced Payoff Amount, Lender shall cause the Return
Deed to be recorded (as a deed in lieu of foreclosure) pursuant to the
terms of this Agreement . . . .

**2.5    Release of Deficiency**

(a) Lender, in connection with a breach by Borrower and /or Guarantor
of the terms of this Agreement relating solely to the payments of money
pursuant to section 1.1© hereof or the payment of the Reduced Payoff
Amount, *hereby waives, releases, relinquishes and surrenders the right
to bring any judicial action (including a lawsuit) that Lender may have
for monetary damages against Borrower and/or Guarantor as a result
of this Agreement and the Loan Documents, whether capable of being
exercised now or in the future, including, but not limited to, any known
or unknown actions* (emphasis added).  That said, upon such
recordation of the Return Deed, coupled with the covenant not to sue
detailed in the preceding sentence, Lender reserves the right to pursue

any action (not involving Borrower or Guarantor) relative to the
Property, including an action to foreclose the Mortgage.

(b) Should Borrower or Guarantor breach the terms of this Agreement
relating to any representations or clauses contained herein (other than
solely failing to make the payments detailed in Section 1.1© or the
payment of the Reduced Payoff Amount), Lender shall have available
any and all remedies against Borrower and Guarantor (including the
right to pursue the full deficiency).  In connection with a default
detailed pursuant to this Section 2.5(b), Lender shall have the right to
record the Return Deed and immediately pursue a deficiency (based on
the Property being valued at the Reduced Payoff Amount).

*See* Forbearance and Loan Modification Agreement, Plaintiff's Ex. 11.

As described above, the $710,000 reduced payoff amount was not a permanent
reduction of the principal loan balance.  Rather, the parties agreed that if this
amount was paid by a certain date, it would be accepted in full satisfaction of the
loan balance, provided that the $15,000 monthly payments were made.  (Trial Tr. at
93, 95).  The Debtor did not make the final payment of $710,000.

The Debtor's failure to remit the final payment led to the execution of an
Amendment to the Forbearance Agreement on June 29, 2011, which extended the
maturity date through September 29, 2011 and allowed the Debtor more time to
perform under the agreement and still take advantage of a reduced payoff amount.
*See* Plaintiff's Ex. 12, Amendment to Forbearance and Loan Modification Agreement
("Amendment to the Forbearance Agreement"); Second Amended Joint List of
Stipulated Facts, ¶ 11, Adversary Proceeding 11-2278, dkt. No. 73.  In order to
receive the new reduced payoff amount of $460,000, the Amendment to the
Forbearance Agreement required the Debtor to pay three extension payments in the

amount $100,000 ($50,000 of which was considered to be a non-refundable fee for the amendment). *See* Paragraph 2, pg. 2 of the Amendment to Forbearance and Loan Modification Agreement. In sum, the Debtor paid $300,000 to obtain a credit in the amount of $250,000 which lowered the reduced payoff amount from $710,000 to $460,000. (Trial Tr. at 96). Each extension payment was made. *See* Defendant's Answers to Requests to Admit, Plaintiff's Trial Ex. 19, p. 10.

The Amendment to the Forbearance Agreement reduced the monthly payments from $15,000 to $10,000 and provided for a balloon payment of $460,000 to be made on or before September 29, 2011. Exclusive of payment defaults, or misrepresentations under the warranties provision, the reduced payoff amount of $460,000 would have been accepted in full satisfaction of the loan balance, which as of the Transfer date, was approximately $2,278,118. *See also* Plaintiff's Ex. 18, June 29, 2011 Payoff Letter; Plaintiff's Ex. 12, Amendment to Forbearance and Loan Modification Agreement, ¶ 2.

On September 29, 2011, the Debtor failed to pay the $460,000 reduced payoff amount. On September 30, 2011, as required by the provisions of the Forbearance Agreement, as amended, TY Grand recorded the deed in lieu of foreclosure and took title and possession of the Property.

A review of the payment history, reproduced below, reveals that between March 23, 2011 and September 29, 2011, the Debtor paid TY Grand $485,000 under the terms of the Forbearance Agreement and the Amendment to the Forbearance Agreement:

| | | |
|---|---|---|
| Earnest Money | $10,000.00 | 3/29/2011 |
| Forbearance Down Payment | $100,000.00 | 3/29/2011 |
| April Payment | $15,000.00 | 4/15/2011 |
| May Payment | $15.000.00 | 5/15/2011 |
| June Payment | $15,000.00 | 6/15/2011 |
| 1st Extension | $100,000.00 | 7/1/2011 |
| 2nd Extension | $100,000.00 | 7/15/2011 |
| July Payment | $10,000.00 | 7/15/2011 |
| 3rd Extension | $100,000.00 | 7/22/2011 |
| August Payment | $10,000.00 | 8/15/2011 |
| September Payment | $10,000.00 | 9/15/2011 |
| **Total Payments:** | **$485,000.00** | |

*See* Defendant's Response to Plaintiff's First Request to Admit Facts and
Genuineness of Documents, Plaintiff's Trial Ex. 19, p. 28.

### D.   The Bankruptcy and Adversary Proceedings

Five days after the deed was recorded, on October 22, 2011, the Debtor filed a
petition for relief pursuant to Chapter 11 of the Bankruptcy Code. Bankruptcy Case
No. 11-428732, dkt. no. 1.  On October 27, 2011, the Debtor filed the instant
adversary proceeding to avoid and recover an alleged fraudulent transfer pursuant
to 11 U.S.C. §§ 544(b) and 548(a)(1)(B) of the Bankruptcy Code and 740 ILCS §§
160/5 and 160/6.  Adversary Case No. 11-02278, dkt. no. 1.  Under Section
548(a)(1)(B) of the Code, a trustee can avoid a transfer made for less than reasonably
equivalent value if the debtor was insolvent at the time of the transfer or became
insolvent as a result of the transfer.  This is the Code's constructive fraudulent
transfer provision.  This cause of action is referred to as "constructive fraud" because

-12-

it omits any element of intent. *In re FBN Food Services, Inc.,* 82 F.3d 1387, 1394 (7th Cir. 1996).

Sometime after the instant adversary proceeding was filed, TY Grand learned that the Debtor breached certain non-monetary warranties and representations made in the Forbearance Agreement, as amended. In particular, TY Grand discovered that at the time the parties entered into the Forbearance Agreement, the City of Chicago had issued several building code citations relating to the Property and that the Debtor had not paid real estate taxes due and owing for the years 2008, 2009 and 2010. *See* 4100 West Grand, LLC Answers to TY Grand LLC's First Request To Admit Facts and Genuineness of Documents, TY Grand Ex. 15, ¶¶ 25-33; Second Amended Joint List of Stipulated Facts, ¶¶ 15-16, Adversary Proceeding 11-2278, dkt. no. 73).

TY Grand claims that on the September 30, 2011 Transfer date, it did not know about the Debtor's non-monetary defaults. Therefore, after the deed was recorded, it did not intend to pursue its remedies under section 2.5(b) of the Forbearance Agreement which allows TY Grand to sue for misrepresentations regarding the real estate taxes and the City of Chicago code citations. (Trial Tr. at 208, 217, 231 and 315).

During TY Grand's due diligence investigation prior to purchasing the Loan Documents, Mr. Brotschul ordered a Title Commitment from the Chicago Title Insurance Company. (Plaintiff's Ex. 10, Trial Tr. at 82-83). However, that search did not reflect the status of the real estate taxes because the closing was scheduled to occur within a short time frame. (Trial Tr. at 82-83). Ty Grand relied on the representations made in section 1.2 of the Forbearance Agreement, and of the Guarantors that the taxes were paid. (Trial Tr. at 82-83, 172, 208). In its discovery responses, the Debtor admitted that as of the date the Forbearance Agreement was

signed, it was not current on all real estate taxes due and owing, and it knew that the City of Chicago had issued building code citations relative to the Property. *See* Defendant's Ex. 15, 4100 West Grand, LLC Answers to TY Grand LLC's First Request to Admit Facts and Genuineness of Documents.

A breach of contract claim is currently pending in the Circuit Court of Cook County against the guarantors based on the alleged misrepresentations made in Section 1.2 of the Forbearance Agreement. It was filed by TY Grand after it was sued herein. (Trial Tr. at 229).

### 1. Defendant's Proofs of Claim

A review of the claims registry in the bankruptcy case reveals that TY Grand filed several proofs of claims pertaining to the alleged breaches of the Forbearance Agreement.

On January 31, 2012, TY Grand filed proof of claim no. 3-1 in the amount of $2,125,655.74 which represented principal, interest and other charges due under the Loan Documents. The claim also noted that TY Grand's claim would be secured by the Property *if the Debtor prevailed in the litigation but that if TY Grand prevailed in the litigation, its claim would be unsecured.* Bankruptcy Case No. 11-42873, Claim 3-1.

On February 1, 2012, TY Grand filed proof of claim no. 3-2 in the amount of $2,125,655.74. A comparison of proofs of claim nos. 3-1 and 3-2 reveals no substantive variation. Bankruptcy Case No. 11-42873, Claim 3-2.

On May 24, 2012, TY Grand filed proof of claim no. 3-3 in the amount of $2,262,170.34. In its exhibit to the claim, Defendant noted that *depending on the*

-14-

*outcome of the litigation, there were two different amounts of its claim.* If TY Grand prevailed in the litigation, its claim would be $2,262,170.34 and if TY Grand did not prevail in the litigation, its claim would be $2,722,170.34. The testimony at trial revealed that claim no. 3-3 was filed to correct an error made elsewhere. (Trial Tr. at 278). Bankruptcy Case No. 11-42873, Claim 3-3.

On July 2, 2012, TY Grand filed proof of claim no. 3-4. As amended, the claim stated that *if the Debtor prevailed in the litigation, TY Grand's secured claim would be $2,722,170.34. If TY Grand prevailed in the litigation, TY Grand would have no claim against the Debtor.* Bankruptcy Case No. 11-42873, Claim No. 3-4.

Proof of claim no. 3-5 was also filed on July 2, 2012. It provided that *if TY Grand does not prevail in the litigation, its secured claim will be $2,722,170.34. If TY Grand prevailed in the litigation, it will have no claim against the Debtor.*

Plaintiff has not filed an objection to any of TY Grand's proofs of claim.

No claims bar date has been set in the Debtor's bankruptcy case.

## III.   DISCUSSION

### A. Count I - Alleged Constructive Fraudulent Transfer Pursuant to Section 548(a)(1)(B)

Count I of the Complaint asserts a claim for avoidance of an alleged fraudulent transfer pursuant to section 548(a)(1)(B) of the Bankruptcy Code. That section provides as follows:

(a)(1) The trustee may avoid any transfer (including any transfer to or for the benefit of an insider under an employment contract) of an interest of the debtor in

property, or any obligation incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily–

> \* \* \*

> (B)  (I) received less than reasonably equivalent value in exchange for such transfer or obligation; and

> (ii)(I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;

> > (II) was engaged in business or a transaction, or was about to engage in business or a transaction for which any property remaining with the debtor was an unreasonably small capital;

> > (III) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debtors matured; or

> > (IV) made such transfer to or for the benefit of an insider, or incurred such obligation to or for the benefit of an insider, under an employment contract and not in the ordinary course of business.

11 U.S.C. § 548(a)(1)(B).

To establish a constructive fraudulent transfer claim, a trustee must prove the following elements: (1) a transfer of the debtor's property; (2) made within two years of the filing of the bankruptcy petition; (3) for which the debtor received less than a reasonably equivalent value in exchange for the transfer; and (4) the debtor was insolvent at the time of the transfer. *General Search.com v. Reliant Interactive Media Corp. (In re General Search.com)*, 322 B.R. 836, 842 (Bankr. N.D. Ill. 2005); 11 U.S.C.§ 548(a)(1)(B).

-16-

As noted above, the Debtor has standing to bring this adversary proceeding pursuant to Code section 1107(a), which vests in a debtor-in-possession the same rights, powers and duties of a trustee serving in a case under chapter 11. 11 U.S.C. § 1107(a).

### 1.    Transfer of an Interest of the Debtor In Property

The Parties have stipulated and the Court finds that the September 30, 2011 recording of the deed was a transfer pursuant to section 548(a)(1). *See* Adversary Proceeding 11-02278, Addendum to Second Amended Joint List of Stipulated Facts, dkt. no. 90, ¶ 40.  The Court also finds that the September 30, 2011 Transfer occurred within two years of the October 22, 2011 Petition Date. *See* Adversary Proceeding 11-2278, dkt. no. 73, ¶ 39.

### 2.    Insolvency

The Parties' joint stipulation of facts states that on the date of the Transfer, the Debtor was insolvent or became insolvent as a result of the transfer. *See* Adversary Proceeding 11-02278, Addendum to Second Amended Joint List of Stipulated Facts, dkt. no. 90.    Accordingly, the Court finds that on the date of the Transfer, the Debtor was insolvent or became insolvent as a result of the Transfer.

The only issue for determination is whether the Debtor received reasonably equivalent value in exchange for the September 30, 2011 Transfer.

### 3.    Reasonably Equivalent Value

Determination of reasonably equivalent value is a two-step inquiry. *General Search.com*, 322 B.R. at 844.  First, the court must "determine whether the

debtor received value, and then examine whether the value is reasonably equivalent to what the debtor gave up." *Id.* at 844. *See also Barber v. Golden Seed Co., Inc.,* 129 F.3d 382, 387 (7th Cir. 1997) ("The test used to determine reasonably equivalent value in the context of a fraudulent conveyance requires the court to determine the value of what was transferred and compare it to what was received."). "Whether value has been given for a transfer depends on all of the circumstances surrounding the transaction." *Scherer v. Quality Communications, Inc. (In re Quality Communications, Inc.),* 347 B.R. 227, 234 (Bankr. W.D. Ky. 2006).

The Seventh Circuit has held that there is no fixed mathematical formula for determining reasonably equivalent value[3]. *Barber,* 129 F.3d at 387; *Bundles v. Baker (In re Bundles),* 856 F.2d 815, 824 (7th Cir. 1988). Rather, the determination of reasonably equivalent value depends on the facts of each case. *Barber,* 129 F. 3d at 387. The court should consider such factors as: (1) whether the value of what was transferred is equal to the value of what was received; (2) the market value of what was transferred and received; (3) whether the transaction took place at arm's length; and (4) the good faith of the transferee. *Apex Automotive Warehouse, L.P. v. Carmell (In re Apex Automotive Warehouse),* 238 B.R. 758, 773

---

[3]In discussing reasonably equivalent value in the foreclosure context, the Supreme Court has opined:

> Our discussion assumes that the phrase "reasonably equivalent" means "approximately equivalent," or "roughly equivalent." One could, we suppose, torture it into meaning "as close to equivalent as can reasonably be expected" - in which event a vast divergence from equivalent value would be permissible so long as there is good reason for it. On such an analysis, fair market value *could* be the criterion of equivalence, even in a forced-sale context; the forced sale would be the reason why gross inequivalence is nonetheless reasonable equivalence. Such wordgaming would deprive the criterion of all meaning. If "reasonably equivalent value" means only "as close to equivalent value as is reasonable," the statute might as well have said "reasonably infinite value."

*BFP v. Resolution Trust Corp.,* 511 U.S. 531, 538, n.4 (1994).

-18-

(Bankr. N.D. Ill. 1999). The burden of proving lack of reasonably equivalent value under section 548 rests on the Trustee. *General Electric Credit Corp. v. Murphy (In re Rodriguez)*, 895 F.2d 725, 726 (11th Cir. 1990).

### a.   Whether the Debtor received value in exchange for the September 30, 2011 Transfer

First, the Court must determine whether the Debtor received value in exchange for the recordation of the deed. For section 548 purposes, value is defined as "property, or satisfaction of a present or antecedent debt of the debtor . . . ." *See* 11 U.S.C. § 548(d)(2)(A). The bankruptcy court decision in *In re Stipetich* is instructive on this issue. *Stipetich v. First Mount Vernon Industrial Loan Association (In re Stipetich)*, 294 B.R. 635 (Bankr. W.D. Pa. 2003).

In *Stipetich*, a chapter 11 debtor filed an adversary proceeding to set aside a transfer pursuant to Code section 548(a)(1)(B). The debtor alleged that the recording of a deed, which operated to convey title, was constructively fraudulent under section 548 and Maryland's fraudulent conveyance statute. In support of her position, the debtor argued that the subject property was worth $1.1 million on the date of the transfer, and that the value she received in return for the deed "was not worth anywhere near $1.1 million." The deed was accepted by the lender in full satisfaction of debtor's obligation on the loan. *Id* at 648-49. In ruling on the parties' cross motions for summary judgment, the court held that the debtor received value equal to the amount of debtor's outstanding indebtedness on the loan as of the transfer date. For purposes of deciding reasonably equivalent value, the court determined the value to be measured against the value of the real property conveyed to be $740,000, which represented the amount contractually due and owing on the debtor's loan. *Id.* at 649. *See BFP v. Resolution Trust Corp.*, 511 U.S. at 535 ("[V]alue means, for purposes of § 548, property, or satisfaction or securing of a . . .

debt of the debtor."); *Lakeside Community Hospital, Inc. v. Orr* (*In re Lakeside
Community Hospital*), 200 B.R. 853, 857 (Bankr. N.D. Ill. 1996) ("Satisfaction of a
debt of the debtor is defined as value in Section 548(d)(2)(A)").

The same holds true herein. The court finds that the release of the Debtor's
indebtedness (as well as the debt of its guarantors) of over $2 million under the Loan
Documents was value for purposes of section 548. On the transfer date, the balance
due under the Loan Documents was approximately $2,278,118. *See* Plaintiff's Ex.
17, Affidavit of Ruben Ybarra, ¶ 6. The unrebutted testimony of Mr. Ybarra and Mr.
Brotschul, TY Grand's Managers, was that on September 30, 2011, TY Grand was
not aware of the misrepresentation defaults, and did not intend to pursue any claims
it may have had against the Debtor and its guarantors under the Forbearance
Agreement, as amended, and under the underlying Loan Documents. Accordingly,
pursuant to section 2.5(a), the provision governing payment defaults, the court
determines that the value conveyed to the Debtor by virtue of the release of its
indebtedness, to be at least $2,278,118. The Debtor also received value from the
Transfer when, according to the Forbearance Agreement, TY Grand waived its right
to pursue non-monetary damages for any deficiency owed under section 2.5(b) of the
Forbearance Agreement; recovery therein was limited to $710,000. *See Cuevas v.
Hudson United Bank* (*In re M. Silverman Laces, Inc.*), No. 01-6209, 2002 WL
31412465, at *5- 6 (S.D.N.Y. Oct. 24, 2002) (recognizing that a lender's waiver of its
right to pursue default remedies is value for purposes of determining reasonably
equivalent value).

>          **b.    Whether the Debtor Received Reasonably
>                  Equivalent Value in Exchange for the
>                  September 30, 2011 Transfer**

Having determined that the Debtor received value, the court must
evaluate whether the value conveyed to the Debtor by virtue of the release of the

-20-

indebtedness was reasonably equivalent to the value TY Grand received. The Parties stipulated that the real estate was worth $1,115,000 on the transfer date. Second Amended Joint List of Stipulated Facts, ¶ 23, Adversary Proceeding 11-2278, dkt. no. 73. The court must also consider the $485,000 cash TY Grand received over the course of the forbearance period.

The Debtor argues that it did not receive reasonably equivalent value in exchange for the Transfer because pursuant to section 2.5(b) of the Forbearance Agreement, the Debtor received only a $460,000 contractual set off amount in exchange for the Property worth $1,115,000. (Trial Tr. at 221-22). In further support, the Debtor relies on TY Grand's amended proofs of claim nos. 3-2 and 3-3 as an admission that only a value of $460,000 was given as a credit for the Property. *See* Plaintiff's Trial Brief, Adversary Proceeding 11-02278, dkt. no. 63, at p. 8. To the contrary, the Debtor received a release of a deficiency claim stipulated to be north of $2,000,000. In any event, the court is not bound by what TY Grand represents to be the amount of a credit. As instructed by the *General Search.com* ruling, the determination of reasonably equivalent value is a question of fact that depends on the circumstances surrounding the transaction. *General Search.com,* 322 B.R. at 844

The Debtor's reliance on the $460,000 amount is misplaced. The uncontested evidence at trial reveals that on September 30, 2011, section 2.5(b) was not in effect as the alleged misrepresentation breaches under the Forbearance Agreement were not known by TY Grand at that time. (Trial Tr. at 161). The Debtor's failure to make the final payment in the amount of $460,000 led to the recordation of the Return Deed that is the subject of this litigation. Indeed, Mr. Ybarra, TY Grand's manager, testified that at the time of the recording on September 30, "since [the failure to make the final payment] was the only thing at the time we knew of that they violated, we deemed the transaction to be over" and

-21-

that "the guarantors were released of their obligation, so we deemed it to be done." (Trial Tr. at 263). Accordingly, for purposes of calculating the value the Debtor received, the court will first focus its inquiry on section 2.5(a) which covers payment defaults.

TY Grand argues that the Forbearance Agreement mandates that the Return Deed be recorded as a deed in lieu of foreclosure in the event of a payment default[4]. *See* Forbearance Agreement, Section. 2.4. Thus, following the Debtor's payment default, TY Grand recorded the deed.

Section 2.5(a) of the Forbearance Agreement provides that TY Grand waived the right to go after the Debtor for any deficiency due under the Forbearance Agreement and the Loan Documents. In other words, on September 30, 2011, by recording the deed, TY Grand waived and released all causes of action it may have had for monetary defaults under the Agreement and the Loan Documents.

The Debtor devoted much time in its pleadings and at trial on the contention that on September 30, 2011, TY Grand had the right to go after the Debtor for the total balance due on the Loan because of the additional defaults under the loan documents, namely, the failure to disclose the unpaid real estate taxes, and the City of Chicago violations.[5] However, in considering reasonably equivalent

---

[4]Section 2.4 of the Forbearance Agreement may not clearly reflect TY Grand's position that the provision mandated the recording of the deed. However, section 2.2, Recordation of Deeds Upon Lender's Discretion,  provides that "Upon a default by Borrower and/or Guarantor, pursuant to the terms of the Loan Documents (as revised by this Agreement) or this Agreement, Lender shall have the right (but not the obligation unless otherwise set forth herein) to record the Return Deed (as a deed in lieu of foreclosure) and cause the Property to be transferred to Lender."

[5]The parties' stipulation reveals that several mechanic liens were filed against the property. *See* Second Amended Joint List of Stipulated Facts, ¶¶ 17-22, Adversary Proceeding

value, the Court must focus its inquiry on what was known by the parties at the time of the transfer.[6] *Morris Communications NC, Inc. v. Ashley Communications, Inc. (In re Morris Communications NC, Inc.)*, 914 F.2d 458, 466 (4th Cir. 1990) (noting that the critical time in determining whether reasonable equivalent value was given is when the transfer is made); *See also Fairchild Aircraft Corp. v. Whyte (In re Fairchild Aircraft)*, 6 F.3d 1119, 1126 (5th Cir. 1993); *Baldi v. Lynch (In re McCook Metals, LLC)*, 319 B.R. 570, 589 (Bankr. N.D. Ill. 2005) ("Equivalent value must be measured as of the time of the transfer."). TY Grand's representatives testified at length that on September 30, 2011, they had no knowledge of the additional defaults and therefore TY Grand did not intend to pursue the Debtor further. This point was not refuted at trial by the Debtor.

Section 2.5(b), which gave TY Grand the right to sue for the non-monetary defaults, limited its recovery thereunder to a deficiency based on the property being valued at the reduced payoff amount, which was $710,000 at the time.

Review of the docket reveals that the Debtor did not list any co-debtors on Schedule H of its Petition. This omission tends to support the court's conclusion that both parties believed that the guarantors were released as provided for in paragraph 2.5(a) of the Forbearance Agreement. (Trial Tr. at 332). Otherwise, the guarantors would have been scheduled as co-debtors or co-obligors.

---

11-2278, dkt. no. 73.

[6]Baird & Jackson, Fraudulent Conveyance Law & Its Proper Domain, 38 VNLR 829, 842 (May, 1985) (opining that consideration should be valued at the time of the transfer based on then-present knowledge).

The Debtor argues that because TY Grand purchased the Loan Documents for $515,000, received $485,000 from the Debtor during the forbearance period, and has been collecting $20,000 in rent from the Property, the transaction lacked reasonably equivalent value because the note cost TY Grand only $30,000. The Debtor cannot assert that the transfer between the Royal Bank of Scotland and TY Grand was avoidable as a fraudulent conveyance because the Property transferred therein was not the Debtor's; it was the property of the Royal Bank of Scotland. That transaction has no relevance to the September 30, 2011 transfer in issue herein. The Debtor again ignores the realities of its bargain with TY Grand, the language of the forbearance agreements and the economic realities of the transaction. By virtue of the forgiveness of debt, TY Grand gave up the right to go after the Debtor for the unpaid loan balance, which as explained above exceeded $2 million and constitutes value for section 548 purposes. Justice Scalia's comment, in *BFP*, 511 U.S. *at 538,* that fair market value would not be the only criterion of equivalence is relevant herein. There, he noted that gross inequivalence was nonetheless reasonable equivalence. While TY Grand paid only $515,000 for an opportunity to obtain real estate of greater value, here too, the court finds that a limited comparison of the dollar amounts that changed hands does not reflect the totality of the economic realities of the September 30, 2011 Transfer.

Defendant TY Grand received $485,000 before September 29, 2011, and property worth $1,115,000 on September 30, 2011. TY Grand received value of $1,600,000 (which amount represents the $1,115,000 value of the real estate plus $485,000 in payments made), whereas the Debtor received a release of a $2.5 million debt under the Loan Documents pursuant to section 2.5(a) of the Forbearance Agreement. Fraudulent transfer liability is triggered when a plaintiff receives less than what was transferred to a defendant, which is not the case here. The Debtor received more than what was transferred to TY Grand.

-24-

When the court considers the transaction in light of section 2.5(b) of the Forbearance Agreement which covered TY Grand's right to sue for non-monetary defaults, the court finds that in addition to receiving $1,600,000 under section 2.5(a) on the transfer date, TY Grand also then gained a claim under section 2.5(b) worth up to $710,000. When that amount is added to the $1,600,000 amount noted above, TY Grand got $2,310,000 on the date of the transfer whereas the Debtor got a release of $2,510,123.90, the amount noted in paragraph 1.2(a) of the parties' Forbearance Agreement as the amount due on January 20, 2011. Again, the Debtor got more out of this transaction than TY Grand.

The court also rejects the contention that the transaction lacked reasonably equivalent value because the parties' agreement was not an arm's length deal, but rather a distress situation. The evidence adduced at trial suggests otherwise. Both Mr. Brotschul and Mr. Ybarra testified that prior to the execution of the Forbearance Agreement, there were several meetings, telephone calls, and email exchanges during which the terms of the proposed agreement were discussed and modified at the request of the parties. (Trial Tr. at 139-40). Indeed, handwritten changes were made to section 2.5(a) of the Forbearance Agreement, initialed by both Mr. Brotschul and Mr. Sullivan, who represented the Debtor during negotiations.[7] See Defendant's Exhibit 10, p. 5; (Trial Tr. at 144-45, 155-56).

Moreover, the court does not believe Mr. Sopcic's testimony that neither he, nor the other principals of the Debtor read the Forbearance Agreement, especially since they had three months to read the initial agreement entered into in March, 2011 before they executed the Amendment to the Forbearance Agreement on June 29, 2011. Given Mr. Sopcic's testimony about his vast experience in real estate

---

[7]The testimony at trial reveals that Attorney Michelle Aljinovic represented the Debtor during the negotiation of the Amendment to the Forbearance Agreement. (Trial Tr. at 156).

matters, the court finds it unlikely that he would enter into such an agreement without reading it. (Trial Tr. at 305, 316, 340). In any event, Mr. Sopcic was represented by counsel during the negotiation and execution of the agreements. (Trial Tr. at 303-07). The Debtor's suggestion that this was a distressed transaction is not supported by the facts.

Finally, the Debtor points to TY Grand's knowledge of the Debtor's default under the Loan Documents as indicia of bad faith. The fact that TY Grand was aware of the Debtor's default under the Loan Agreements is not sufficient to support a finding that TY Grand did not act in good faith, especially in light of the circumstances leading up to the execution of the Forbearance Agreement and the amendment thereto. According to the testimony at trial, the transaction could have resulted in an equity cushion for the Debtor. (Trial Tr. 255). TY Grand maintains that the Debtor had been underwater by approximately $1.4 million in that the Debtor's debt was $2,500,000 on a property valued at $1,115,000. (Trial Tr. at 254-255). TY Grand's manager, Mr. Ybarra, testified that had the Debtor taken advantage of the reduced payoff amount of $710,000, the Debtor would have ended up with $300,000 in equity in the Property. (Trial Tr. at 254-255).

The evidence also reveals that around the time the June payment of $710,000 became due, TY Grand agreed to amend the terms of the Forbearance Agreement to allow the Debtor more time to take advantage of a reduced payoff amount to receive a release of the principal balance. No request was made by the Debtor for an additional extension when it became apparent that the payment due on September 29, 2011 would not be made. (Trial Tr. at 261-262).

The court finds that the Debtor has not proved, by a preponderance of the evidence, that it received less than reasonably equivalent value in exchange for

-26-

the Transfer.[8] The court also finds that the release of the Debtor's indebtedness of $2,510,123.90 was reasonably equivalent to the $2.3 million TY Grand received. The amount of the Debtor's debt satisfaction alone is reasonably similar to the value transferred to TY Grand. *See In re Dullea Land Co. v. Ideal AG Corp. (In re Dullea Land Co.),* Case No. 00-31676, 2001 WL 1892189, at * 7 (Bankr. D.N.D. June 21, 2001) ("[If] the amount of debt satisfaction was reasonably similar to the fair market value of the property transferred to the creditor, no fraudulent transfer has occurred"), *aff'd,* 269 B.R. 33 (B.A.P. 8th Cir. 2001). Accordingly, the Court finds against the Debtor, 4100 West Grand LLC, the Plaintiff, on Count I. The court rules in favor of the Defendant, TY Grand LLC on Count I of the Complaint.

## B. Count II - Avoidance of Fraudulent Transfers pursuant to 740 ILCS §§ 160/5 and 160/6

In Count II of the Complaint, the Debtor asserts a claim for the avoidance and recovery of transfers pursuant to Illinois law. *See* 740 ILCS §§ 160/5 and 160/6. 11 U.S.C. § 544(b) allows a trustee to avoid transfers under applicable state law. The requirements of 11 U.S.C. 548 and sections 5 and 6 of the Illinois Uniform Fraudulent Transfer Act are analogous. *Solow v. Reinhardt (In re First Commercial Mgmt. Group, Inc.),* 279 B.R. 230, 240 (Bankr. N.D. Ill. 2002) ("Except for different statutes of limitations, the state and federal statutes are functional equivalents, and the analysis applicable to the first count is also applicable to the second."). Accordingly, for the reasons noted herein as to Count I, the Court finds against the Debtor, 4100 West Grand LLC, the Plaintiff, on Count II. The court rules in favor of the Defendant, TY Grand LLC on Count II of the Complaint.

---

[8]The Court notes that neither party alleges that the higher standard of proof, by clear and convincing evidence, applies to constructive fraudulent transfer claims under section 548(a)(1)(B) or the Illinois Uniform Fraudulent Transfer Act. Because the Complaint herein alleges "constructive" fraud rather than "actual" fraud, the lesser standard of proof, by a preponderance of the evidence, applies. *See In re McCook Metals, LLC,* 319 B.R. 570, 587 (Bankr. N.D. Ill. 2005); *Grogan v. Garner,* 498 U.S. 279, 286 (1991).

### C. Count III - Recovery of Fraudulent Transfers Pursuant to 11 U.S.C. §550

Because the court finds for TY Grand on Counts I and II of the Complaint, disallowing the Debtor's avoidance claims, the court need not address the merits of the Debtor's Section 550 claim in Count III. Section 550 of the Code allows a trustee to recover avoided fraudulent transfers. Because the Transfer herein will not be avoided, the Debtor will not be allowed to recover the Property. The court rules against the Debtor, 4100 West Grand LLC, the Plaintiff, on Count III  The court rules in favor of the Defendant, TY Grand, LLC on Count III.

## III.        CONCLUSION

For the foregoing reasons, the Court finds for the Defendant on Counts I, II and III of the Complaint. The Plaintiff has not sustained its burden of proving that the Plaintiff did not receive reasonably equivalent value in exchange for the September 30, 2011 Transfer.

This memorandum opinion constitutes the Court's Findings of Fact and Conclusions of Law pursuant to Federal Rule of Bankruptcy Procedure 7052. A separate judgment order will issue.

**DATED: October 16,  2012**                    **ENTER:**

J.P.Cox        *Jacqueline P. Cox*
_____

**Jacqueline P. Cox**
**U.S. Bankruptcy Judge**

-28-